**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MASTEC RENEWABLES CONSTRUCTION COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> MERCER COUNTY IMPROVEMENT AUTHORITY, MERCER COUNTY, U.S. BANK, N.A., and JOHN DOES 1-100 and ABC ENTITIES 1-100, <br><br> Defendant. | Civil Action No. 15-1897 (FLW)(LHG) <br><br> **OPINION** |

**WOLFSON, United States District Judge**:

Before the Court is the motion of Defendants Mercer County Improvement Authority ("MCIA") and Mercer County (collectively, "Defendants") to stay this action pending the outcome of the appeal in the related action of *MasTec Renewables Construction Company, Inc. v. SunLight General LLC, et al.*, MER-L-336-14, currently pending before the New Jersey State Appellate Division. Plaintiff MasTec Renewables Construction Company, Inc. ("Plaintiff" or "MasTec"), opposes the motion and seeks to proceed with this action during the pendency of the appeal. For the reasons set forth below, the Court finds that the outcome of Plaintiff's state court appeal substantially affects or is dispositive of issues in the present action, and, thus, I will stay this case pending the decision of the New Jersey Appellate Division.

I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

This matter concerns a dispute over payment for the construction of a solar energy facility located at Mercer County Community College in West Windsor, New Jersey (the "Solar

1

Project"). Compl. at ¶¶ 22, 23, 24, and 32. Defendant MCIA awarded SunLight General Capital, LLC ("SunLight General") the contract to build the Solar Project. SunLight General's successful proposal identified MasTec as a subcontractor responsible for the construction of the Solar Project. *Id*. at ¶¶ 34-38. MCIA and SunLight General's affiliate, SunLight General Mercer Solar, LLC ("SunLight"), executed three agreements in connection with the Solar Project. *Id*. at ¶ 39. MasTec is not a party to, nor did it participate in the negotiation of, any of the three agreements. *Ibid.* One of the agreements that MCIA and SunLight executed was entitled the Lease Purchase Agreement (the "Lease"). The Lease contains provisions concerning SunLight's obligation to construct the Solar Project, MCIA's responsibility to fund the majority of the Project's costs, the procedure for MCIA to release payments for project costs, and SunLight's lease obligations and rights. *Id.* The Lease specifies that construction costs are to be paid through the use of: (i) $27,243,000 from Series 2011 Local Bonds issued by MCIA; and (ii) certain Grant Funds that SunLight expected to receive from the U.S. Department of Treasury, pursuant to Section 1603 of the American Recovery and Reinvestment Act of 2009. Pursuant to Section 5.09 of the Lease, SunLight acknowledged that the net amounts received from the issuance of the MCIA Bonds, plus the anticipated Grant Funds, would be sufficient to pay for "all of the costs to design, permit, acquire, construct, and install" the Solar Project (the "Project Funds"). Section 5.10(c) of the Lease provides that SunLight is required to submit draw applications to the Trustee of the Project Funds, specifying the amount due and to be paid.

MasTec and SunLight executed a subcontract related to the Solar Project ("Mercer EPC"), to which Defendants Mercer County and MCIA were not parties. Compl. at ¶¶ 45, 46, and 75. Pursuant to the Mercer EPC, MasTec agreed to construct the Solar Project as SunLight's subcontractor. *Ibid.* The base price for the construction work to be performed by MasTec

2

covered by the Mercer EPC was $30,062,500. Compl. at ¶ 77. MasTec completed the Solar Project, and SunLight accepted the Project as complete; however, there were extensive delays in construction, caused by protests by local residents, Hurricane Sandy, upgrades to certain equipment at the College, and other modifications in the construction plan. *Id*. at ¶ 84. SunLight did not pay MasTec the full amount MasTec believed it was owed under the Mercer EPC, and, on January 16, 2014, MasTec filed a Municipal Mechanics' Lien Notice[1] with MCIA in the amount of $10,250,500 (the "Municipal Lien"). *Id*. at ¶ 106. At the time MasTec filed the Municipal Lien Notice, the Trustee-administered account containing the Project Funds contained approximately $5,100,000. *Id*. at ¶ 107. MCIA promptly disputed the validity of Plaintiff's lien on January 21, 2014.

On February 11, 2014, MasTec filed a suit in Mercer County Superior Court captioned *MasTec Renewables Construction Company, Inc. v. SunLight General Mercer Solar, LLC, et al.*, and bearing Docket No. MER-L-336-14, to foreclose its Municipal Lien (the "State Action"). Compl. at ¶ 110. MasTec and MCIA agreed to stay the State Action by Consent Order entered on July 7, 2014, pending certification of another lawsuit presenting the same question of the validity of a statutory lien against a county improvement authority in *Morris Cnty. Imp. Auth. v. Power Partners MasTec, LLC*, 2014 WL 1125378 (App. Div.), *cert. granted*, 218 N.J. 532 (2014). *Id*. at ¶ 111.

Effective March 3, 2015, MasTec and SunLight entered into a Settlement Agreement, resolving claims related to the Solar Project (the "Settlement Agreement"). Compl. at ¶¶ 126 and

---

[1] The Municipal Mechanics' Lien Law ("MMLL") allows, *inter alia*, a subcontractor which has not been paid in full for its construction work to "have a lien for the value of the labor or materials, or both, upon the moneys due or to grow due under the contract [between the contractor and the public agency] and in the control of the public agency, to the full value of the claim or demand." N.J.S.A. § 2A:44-128.

3

127. Pursuant to the Settlement Agreement, SunLight agreed that MasTec completed the Solar Project and is entitled to an adjusted Mercer EPC subcontract price of $29,625,817.00. *Id.* at ¶ 128. SunLight acknowledged in the Settlement Agreement that it currently owes MasTec $6,907,433 under the EPC Subcontract. *Id.* at ¶¶ 128, 129, 162.

In April 2015, while the State Action was stayed, MasTec initiated this litigation by filing an eleven-count Complaint against Defendants and U.S. Bank. In Count I, Plaintiff alleges that Defendants MCIA and Mercer County were negligent in observing their obligations to MasTec under the Payment Bond Act. In Count II, Plaintiff alleges a private right of action under the Payment Bond Act. In Counts III and IX, Plaintiff alleges that it is a third party beneficiary of various agreements between Defendants and non-party SunLight surrounding the Solar Project. In Count IV, Plaintiff seeks an equitable lien on the $5,100,000 in undisbursed Project Funds controlled by Mercer County, MCIA and/or the Project Fund Trustee. In Count V, Plaintiff brings a claim under the NJ Trust Fund Act, N.J.S.A. § 2A:44-148. In Count VI, Plaintiff brings a claim for unjust enrichment. In Count VII, Plaintiff brings a claim in *quantum meruit*. In Count VIII, Plaintiff brings a claim for equitable subordination. Finally, in Counts X and XI, Plaintiff seeks a declaratory judgment that MasTec has a superior right to certain funds held in escrow.

While this matter and the State Action remained pending, MasTec settled the *Morris County* matter, on May 22, 2015, before it could be decided by the New Jersey Supreme Court. Plaintiff's post-settlement dismissal of its appeal rendered final the decision of the New Jersey Appellate Division in *Morris Cnty. Imp. Auth*. In that decision, the Appellate Division affirmed the trial court's "ultimate judgment denying Mastec the protections available under the Municipal Mechanics' Lien Law because the County Improvement Authorities Law, *N.J.S.A.* 40:37A–44 to –135, specifically exempts the property of a county improvement authority from

'judicial process.' *N.J.S.A.* 40:37A–127. . . . [B]ecause a municipal mechanics' lien can only be enforced through judicial process, the liens are unenforceable as a matter of law." *Morris Cty. Imp. Auth. v. Power Partners Mastec, LLC*, No. A-5082-12T4, 2014 WL 1125378, at *6 (N.J. Super. Ct. App. Div. Mar. 24, 2014).

After the settlement and dismissal of the *Morris County* appeal before the New Jersey Supreme Court, MasTec applied to the Superior Court to lift the stay in the State Action. By Order dated September 1, 2015, the State Action was reinstated. On October 16, 2015, MCIA filed a motion to dismiss the State Action based on, *inter alia*, (i) the entire controversy doctrine because of the simultaneously pending federal action before this Court, and (ii) statutory immunity on the basis of the Appellate Division's *Morris County* decision. MasTec opposed MCIA's motion by arguing that the State Action is distinct from this litigation, rendering the entire controversy doctrine inapplicable, and that the *Morris County* decision did not dictate the result. The Superior Court heard oral argument on MCIA's motion to dismiss the State Action on December 18, 2015. At the conclusion of oral argument, the Superior Court rendered a decision on the record dismissing the State Action for substantially the same reasons set forth in the *Morris County* decision, namely because of the court's belief that "[l]iens are exempt as applied to county improvement authorities." Tr. at 58:17-18. On January 5, 2016, MasTec appealed to the Appellate Division the Superior Court's decision dismissing the State Action. That appeal remains pending.

On May 2, 2017, Defendant Mercer County moved to dismiss Plaintiff's Complaint in this action. On May 15, 2017, Defendant MCIA filed its own motion to dismiss the Complaint on a number of different bases. At the same time, however, Defendant MCIA also filed a motion to stay this matter, pending the resolution of the appeal of the State Action. Defendant Mercer

5

County joined in Defendant MCIA's motion to stay on June 12, 2017. In their motion to stay, Defendants argue (i) that a stay should be granted to conserve judicial resources and avoid duplication of effort; (ii) that a stay should be granted because Plaintiff's "claim splitting" in filing its MMLL claim in state court and the remainder of its claims in federal court violates New Jersey's entire controversy doctrine; and (iii) that, in the alternative to a stay, the Court should dismiss this action under the *Colorado River* or *Younger* abstention doctrines. In opposition, Plaintiff contends that this litigation should not be stayed because MasTec's *in personam* claims against MCIA and Mercer County, including contract and quasi-contract claims in addition to various other forms of equitable and declaratory relief, are not affected by, contingent, or dependent upon the outcome of the *in rem* State Action currently on appeal before the State Appellate Division, which Plaintiff contends deals only with establishing a priority right to the Project Funds. Because the Court finds that the outcome of the appeal in the State Action is potentially dispositive of a number of Plaintiff's claims in the present action, an exercise of the Court's discretion to stay this case is warranted.

II. STANDARD OF REVIEW

"A United States district court has broad power to stay proceedings." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). *See also CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 141 (3d Cir. 2004) (same); *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994) (same). "Courts generally

weigh a number of factors in determining whether to grant a stay including: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotations and citations omitted).

"A stay is an extraordinary measure." *Breyer*, 41 F.3d at 893. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citing *Clinton v. Jones,* 520 U.S. 681, 708 (1997); *Landis,* 299 U.S. at 255). The moving party "must state a clear countervailing interest to abridge a party's right to litigate." *CTF Hotel Holdings,* 381 F.3d at 140. "Where a stay is sought pending resolution of purportedly related litigation, as here, courts consider whether resolution of the related litigation would substantially impact or otherwise render moot the present action."*Akishev*, 23 F. Supp. 3d at 446. As the Third Circuit has directed, "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel*, 544 F.2d at 1215.

III. ANALYSIS

In the present motion, Defendants argue that the outcome of Plaintiff's appeal of the State Action, now pending before the New Jersey State Appellate Division, will substantially affect or be dispositive of certain issues raised in the Complaint. Specifically, Defendants contend that Plaintiff's claim for an equitable lien in the present action, seeks to vindicate the same right and obtain the same relief as the statutory lien at stake in the State Action. Defendants therefore request a stay of this action to conserve judicial resources on these shared questions of law. In

7

opposition, Plaintiff argues that the eleven-count Complaint in this case encompasses causes of action implicating different questions of law and fact than those involved in the State Action; specifically, Plaintiff's contract and quasi-contract claims involve recovery against Defendants *in personam* and seek pecuniary damages rather than a priority interest in Project Funds through an action *in rem*. Plaintiff therefore contends that Defendants' motion wrongly focuses almost exclusively on Plaintiff's Count IV equitable lien claim. Secondly, perhaps acknowledging the facial similarity of the relief requested in Count IV to that sought in the State Action, Plaintiff argues that Plaintiff may be awarded an equitable lien irrespective of its entitlement to a lien under the MMLL because the two claims involve proof of different legal elements. Plaintiff contends that, in contrast to its MMLL claim in the State Action, its federal equitable lien claim is established where a subcontractor demonstrates that moneys being held by a public entity were segregated and earmarked for the purpose of the particular public project upon which the subcontractor worked. *See Stulz-Sickles Co. v. Fredburn Constr. Corp.*, 114 N.J. Eq. 475, 479-482 (1933); *National Surety Corp. v. Barth*, 11 N.J. 506 (1953); *Universal Bonding Ins.Co. v. Gittens and Sprinkle Enterprises, Inc.,* 960 F.2d 366 (3d Cir. 1992). Plaintiff also again stresses the distinction between its state court statutory action *in rem* and its alleged federal equitable action *in personam*.[2]

---

[2] The parties also devote significant effort in briefing to the question of whether Plaintiff's present federal suit is barred by the existence of Plaintiff's first-filed state suit under New Jersey's entire controversy doctrine. Plaintiff in particular devotes substantial argument to the proposition that its MMLL claim was required to be brought in New Jersey Superior Court as the court vested with exclusive jurisdiction over such claims under New Jersey state law. On the present motion, this Court need not determine the applicability of the entire controversy doctrine to the present suit. For the benefit of the parties in any renewed briefing should this matter be reinstituted after the stay, however, the Court observes that "[i]t is axiomatic that, because federal subject matter jurisdiction can be conferred or withdrawn only by Congress, a federal court must look only to federal, not state, law to determine whether that jurisdiction exists, even when the substantive right at issue is a creature of state law. That a state simply has no power to

Here, Defendants are correct, and Plaintiff's arguments are unpersuasive, because, regardless of the legal form of Plaintiff's action, the relief sought in establishing a lien against the $5,100,000 in undisbursed Project Funds is the same in both the action currently on appeal before the state Appellate Division and the action before this federal court. "In giving federal courts 'cognizance' of equity suits in cases of diversity jurisdiction, Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law or to create substantive rights denied by State law." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945).[3] As the Supreme Court has explained:

---

divest a federal court of its constitutionally or congressionally conferred subject matter jurisdiction has been settled law for nearly a century." *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1109 (3d Cir. 1995) (citations omitted) (collecting cases). The Supreme Court first enunciated this principle well over one hundred years ago, when it found that

> In all cases, where a general right is thus conferred [by a State], it can be enforced in any Federal court within the State having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provision of State legislation that it shall only be enforced in a State court. The statutes of nearly every State provide for the institution of numerous suits . . . yet it never has been pretended that limitations of this character could affect, in any respect, the jurisdiction of the Federal court over such suits where the citizenship of one of the parties was otherwise sufficient. Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

*Chicago & N.W.R. Co. v. Whitton*, 80 U.S. 270, 286, 20 L. Ed. 571 (1871). This Court thus agrees with the holding in *Liner Tech., Inc. v. Warren Cty. Pollution Control Fin. Auth.*, No. CIV. 91-1713 (CSF), 1991 WL 246943, at *2 (D.N.J. Oct. 22, 1991), that the federal courts sitting in diversity have jurisdiction over New Jersey State MMLL claims. Accordingly, no jurisdictional bar obligated Plaintiff to bring its MMLL claim in state court and the balance of its claims concerning the same subject matter here.

[3] *See also INS v. Pangilinan,* 486 U.S. 875, 883–85, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) ("[I]t is well established that '[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law,' " *id.* at 883, 108 S.Ct. 2210 (quoting *Hedges v. Dixon Cnty.,* 150 U.S. 182, 192, 14 S.Ct. 71, 37 L.Ed. 1044 (1893) (alteration in original))); *Lupera-Espinoza v. Attorney Gen. of U.S.*, 716 F.3d 781, 788 (3d Cir. 2013) ("A court may not award equitable relief in contravention of the expressed intent of Congress.").

> "This does not mean . . . that a federal court may not afford an equitable remedy not available in a State court. . . . a federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it. . . . [F]ederal courts enforce[] State-created substantive rights if the mode of proceeding and remedy [a]re consonant with the traditional body of equitable remedies, practice and procedure, and in so doing they [a]re enforcing rights created by the States and not arising under any inherent or statutory federal law."
>
> . . .
>
> "But since a federal court adjudicating a State-created right solely because of diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State."

*Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 57 n.8 (3d Cir. 1977) (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105-107, 108-109 (1945)).

In Count IV of the Complaint, Plaintiff contends that it is entitled to an equitable lien against $5,100,000 in undisbursed funds in the Project Funds account and other accounts controlled by Defendants MCIA and Mercer County, the same corpus of money against which Plaintiff previously sought a statutory lien under the MMLL in New Jersey Superior Court. *See* Compl. in *MasTec v. SunLight, et al.*, Docket No. MER-L-336-14 (Feb. 11, 2014), ¶¶ 53-54. The Superior Court, however, has already determined, relying upon the decision of the New Jersey State Appellate Division in *Morris*, that Plaintiff cannot pursue a statutory lien against MCIA, because the property of MCIA is immune from judicial process under the County Improvement Authorities Law, *N.J.S.A.* 40:37A–44 to –135. Plaintiff's argument is thus that the Federal Court should impose an equitable lien where a State Court has already held that a statutory lien is barred by statutory immunity. "This argument . . . is an attempt to obtain through equity that which the law . . . forbids[,]" and, therefore falls outside the proper exercise of this Court's equitable powers. *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 485 (1997); *accord Middlesex Cty. Welfare Bd. v. Motolinsky*, 134 N.J. Eq. 323, 331, 35 A.2d 463, 469 (Ch. 1944) ("Equity cannot fashion exceptions which circumvent a statute[']s obvious[] inten[t]").

In other words, the Court finds that it would be an inappropriate use of this Court's discretionary powers to grant an equitable lien upon the same corpus of money that a New Jersey State Court has found statutorily immune from judicial process. The outcome of Plaintiff's appeal of the State Court's immunity determination is thus potentially dispositive of Plaintiff's Count IV equitable lien claim, which is also a subject of Defendants' pending motions to dismiss. Were Plaintiff to prevail in its appeal and the New Jersey Appellate Division to find that Defendants were not immune from liens levied under the MMLL and to direct that Plaintiff's MMLL lien action be allowed to go forward, Plaintiff's claim for an equitable lien in this action would potentially be mooted as there would be no need to seek a lien in equity already enforceable at law. If, on the other hand, the dismissal of the State Action is upheld, Count IV might be subject to dismissal as barred under the well-established precedents set forth above.[4]

Accordingly, the Court finds that the outcome of Plaintiff's appeal in the State Action substantially affects and is potentially dispositive of significant issues in the present litigation. A stay of this matter pending the outcome of the appeal is therefore warranted. *Bechtel*, 544 F.2d at 1215. The Court further finds that Plaintiff will not be unduly prejudiced by the delay, as Defendants' motions to dismiss have already been fully briefed, and the outcome of Plaintiff's state appeal affects the determination of those motions, requiring forbearance on this Court's part to avoid inconsistent rulings in litigation that Plaintiff voluntarily chose to divide across

---

[4] Plaintiff's argument that the outcome of the State Action may impact its Count IV equitable lien claim alone, and the other counts may proceed unhindered is also ill-founded. For example, in Count V, Plaintiff seeks relief under the New Jersey Trust Fund Act. A potentially dispositive issue for this claim, disputed by the parties in the pending motions to dismiss, is whether Plaintiff has standing to sue under the Act, which Defendants contend limits recovery to persons entitled to a lien on the subject funds under either or both of the MMLL or the Bond Act. *See Key Agency v. Cont'l Cas. Co.*, 55 N.J. Super. 58, 63-64 (Ch. Div.) *aff'd*, 31 N.J. 98 (1959). Whether the dismissal of Plaintiff's MMLL lien claim is upheld by the Appellate Division thus has implications for Plaintiff's Count V Trust Fund Act claim as well.

jurisdictions. *See* note 2, *supra*. Moreover, although a denial of a stay would not necessarily create a clear case of hardship for Defendants, granting the stay significantly simplifies the issues on the dispositive motions now pending before the Court and will simplify and narrow any issues for trial, including avoiding inconsistent rulings.

IV. CONCLUSION

For the foregoing reasons, Defendants' motion to stay is granted, and this matter is stayed pending the outcome of the appeal of the decision of the Superior Court in *MasTec Renewables Construction Company, Inc. v. SunLight General Mercer Solar, LLC, et al.*, Docket No. MER-L-336-14.[5] Defendants' pending motions to dismiss are administratively terminated for the duration of the stay. This matter is also administratively terminated and may be reopened by any party upon the filing of the decision of the Appellate Division. An appropriate Order to follow.

Dated: _____12/19/2017_____    _____/s/ Freda L. Wolfson_____
                                                The Honorable Freda L. Wolfson
                                                United States District Judge

---

[5] I also appreciate that a petition for certification may be filed, as was in the *Morris County* case. If such a petition were granted, a stay would likely be continued here to await a final state court ruling on this issue.